NOT FOR PUBLICATION

<div align="center">

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

</div>

| | |
|---|---|
| WILSON BRUM, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> EXTREME BUILDERS, INC., : <br> : <br> Defendant. : | Civil Action No. 06-3327 (DRD)(MAS) |

Hon. Michael A. Shipp, U.S.M.J.

### REPORT AND RECOMMENDATION

This matter comes before the Court by way of Plaintiff Wilson Brum's ("Plaintiff") Motion for Final Judgment by Default for compensatory damages against Defendant Extreme Builders, Inc. ("Defendant"). (Docket Entry No. ("Doc. No.") 17.)  Plaintiff seeks compensatory damages from Defendant with respect to his negligent maintenance of a chimney claim for past and future economic loss, future medical expenses, special damages and pain and suffering. (Doc. No. 1 ("Compl.") ¶¶ 34, 41, 49-50.)

This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons expressed below, the Undersigned respectfully recommends that the Court enter an Order granting Plaintiff's Motion for Final Judgment by Default.  It is further recommended that the Court grant Plaintiff an award of $2,015,051.37 compensatory damages, which represents: $21,419.73 in past lost wages, $1,243,631.64 in special damages and $750,000.00 in pain and suffering.  Defendant Extreme Builders, Inc. shall be liable for the total amount awarded.

**I.      BACKGROUND**

As the parties are familiar with the facts of this matter, this Court will address only those facts relevant to the motion currently pending before this Court. At the time of the alleged injury, Plaintiff was employed as a carpenter on various construction sites. (Compl. ¶¶ 1, 26.) Plaintiff was injured when a chimney fell on him on October 18, 2005, while working at 92 Taggert Way, Saddlebrook, New Jersey ("Site"). (*Id.*) On July 15, 2006, Plaintiff filed a suit against multiple contractors operating at the Site. (*Id.* at ¶¶ 2-6.) Plaintiff alleged that each of the contractors was responsible for negligently maintaining the roof of the Site. (*Id.* at ¶¶ 71.) In particular, Plaintiff claimed the "cover or tarp covering the area where the roof had been partially or totally demolished and removed . . . was so negligently, carelessly, and recklessly applied and maintained, that it caused the chimney to collapse striking the plaintiff and causing him to sustain most severe personal injuries and other damages." (*Id*. at ¶¶ 39-40.)

On April 3, 2007, Plaintiff submitted a Request for Default against Defendant for failure to file an Answer to the Complaint. (Doc. No. 17.) An Entry of Default Judgment was entered against Defendant on June 29, 2007 by the Clerk of the Court. (Doc. No. 18.) The Undersigned conducted a proof hearing on July 9, 2008. (*See* Doc. No. 34 ("Proof Hearing").) During the hearing, Plaintiff testified as to how the incident occurred and described his injuries that resulted from the incident. (*See generally* Proof Hearing Transcript ("Tr.").) The Plaintiff next summarized his claims and was ordered to submit written and documentary evidence that supported his damage claims for the Court's review. (Tr. 4:8-14.) The Plaintiff testified that he received approximately $945,000 in settlement proceeds from the other Defendants. (*Id.* at 9:18-19.) Plaintiff used approximately $466,000 of the settlement to pay back the Workmen's Compensation Insurance Company, Paradigm, which had previously paid Plaintiff approximately $1,250,000. (*Id.* at 9:24-10:1.) According to Plaintiff, approximately $750,000 was paid to various doctors and hospitals for medical bills associated with the incident. (*Id.* at 10:3-4; Attorney Cert. ¶ 8, Exh. 17.)

Plaintiff requests that this Court enter a $50 million dollar judgment against Defendant. (Compl. ¶ 71.) At the proof hearing, expert testimony was not provided to support Plaintiff's damages claims. (*See generally* Tr.) While Plaintiff's counsel submitted an Attorney's Certification and Summary with Exhibits ("Certification"), the Certification did not include any expert witness affidavits and did not attach or otherwise provide a list of specific damages to support Plaintiff's damages claims.

## II.  DISCUSSION

When deciding a motion for final judgment by default, this Court must accept Plaintiff's factual allegations as true. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 C. Wright, A. Miller & M. Kane, *Fed. Practice & Procedure*, § 2688 at 444 (2d ed. 1983)). While accepting Plaintiff's factual allegations as true, this Court must decide the amount of damages due as a matter of law. *Id*. Notably, even after default has been entered against a party, a court may refuse to enter an award of damages against the defaulting party. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984).

When calculating damages for a tort claim, this Court must apply New Jersey law. *See Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008) ("if the matter is substantive, the court must apply the substantive law of the forum state."). Under New Jersey law, a plaintiff must "prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate." *Kelly v. Berlin*, 692 A.2d 552, 558 (N.J. Super. App. Div. 1997) (quoting *Lane v. Oil Delivery, Inc.*, 216 N.J. Super. 413, 420 (App. Div. 1987)). Here, Plaintiff did not submit evidentiary support for any specific damage claims, instead requesting a lump sum of $50 million dollars for compensatory damages for future economic loss, future medical expenses, special damages and pain and suffering. (*See* Compl. ¶ 71.) Nonetheless, this Court will decipher how much

Plaintiff is entitled to in damages, based on a fair assessment and consideration of the facts and evidence in the record as a whole.

      A.     *Past & Future Economic Loss Damages*

Plaintiff has a right to compensation for any lost earnings resulting from Defendant's wrongdoing. N.J. Model Civ. Jury Charges 8.11C, *see* at www.judiciary.state.nj.us/civil/civindx.htm (last visited June 7, 2010). When calculating damages the Court should consider the length of time during which Plaintiff was unable to work, prior income and whether Plaintiff has returned to work. *Id.*

Plaintiff's ability to work as a construction worker is now limited as a result of Defendant's negligence. (*See generally* Tr.) As a construction worker, Plaintiff claimed that he earned approximately $500 to $600 per week. (Tr. 8:23.) Plaintiff's inability to work commenced on the date of the last incident and has continued at least until the date of the proof hearing on July 9, 2008. (*Id.* at 9:3.) As a twenty-six year old, the Plaintiff could have continued working as a construction worker had he not been injured. (*Id.* at 7:7, 8:25, 9:1-5.) However, there is no evidence in the record that indicates that Plaintiff is unable to work in another occupation in a different capacity.

Although Plaintiff failed to provide written support regarding his weekly income, this Court will accept Plaintiff's factual assertion as true. Likewise, the Plaintiff did not provide any information about how often he was employed on worksites, thereby making this Court's task of assessing damages difficult. (*See id.* at 8:10-23.) Since Plaintiff does not have to establish damages with precision, however, the Court may presume that the Plaintiff was working full-time for at least six months out of the year for $600 per week (*see id.* at 8:25, 9:1-5). *See* N.J. Model Civ. Jury Charges 8.11C. By that estimate, the Plaintiff lost $14,400 for each year he was unable to work. (*See* Tr. 8:25, 9:1-5.) Since Plaintiff was unable to work for the remainder of 2005 after the incident and

4

injury effects continued through the date of the proof hearing in 2008, the Undersigned finds that Plaintiff is entitled to gross lost wages totaling $42,600.[1] (*See id.*)

However, the amount recovered for past wages is limited to those earnings that would have been received had the party seeking damages not been injured. N.J. Model Civ. Jury Charges 8.11C. Accordingly, payments of lost wages from workmen's compensation funds must be factored into the amount recovered. *See id*. Here, Paradigm issued $21,180.27 in temporary wages to Plaintiff for worker's compensation. (Exh. 17 at 1.) Thus, this Court must deduct $21,180.27 from the gross amount of past lost wages.[2] Accordingly, the Undersigned finds good cause to award $21,419.73 to Plaintiff for past economic loss damages stemming from the incident and respectfully recommends entry of such an award to this Court.

With regard to future wages, this Court finds that, based on the evidence before this Court, or lack thereof, such an award is inappropriate. A party may obtain an award for future wage loss stemming from the incident and injury at issue, but only if same party can demonstrate that it took reasonable measures to reduce its damages. N.J. Model Civ. Jury Charges 8.11C. Here, Plaintiff failed to make such a demonstration. First, it is this Court's belief that Plaintiff may be capable of working in a different field of employment. (*See* Exh. 10 at 5.) Second, Plaintiff failed to demonstrate that he is unable to obtain new work or that he has otherwise attempted to reduce his future wage loss

---

[1] In reaching this number, the Court used the date of the incident (October 18, 2005) through the date of the proof hearing (July 9, 2008) as the range for calculating damages, which equates to two (2) years, eight (8) months and three (3) weeks or 995 days. *See* www.convertit.com/Go/ConvertIt/Calculators/Date_and_Time/ (last visited June 7, 2010). At $600 per week for half the amount of time he could have been working (approximately 71 weeks), this Court finds that Plaintiff lost $42,600 in earnings. Notably, when awarding lost wages, the amount should reflect post-tax earnings. *See Ruff v. Weintraub*, 105 N.J. 233, 235 (1987). However, because written supporting evidence is scarce to estimate post-tax earnings, this Court instead decided purposely to estimate the number of weeks Plaintiff worked in a conservative manner, in order to reach a fair amount that reflects tax deductions.

[2] The record does not state whether or not Plaintiff's payment of $466,000 to Paradigm, the Workmen's Compensation Insurance Company, covered lost wages. (*Id.* at 9:24-10:1.) Since Plaintiff has the burden of proving damages to a reasonable degree of certainty, this Court will not presume that Paradigm was reimbursed.

damages.  Therefore, the Undersigned respectfully recommends that this Court deny without prejudice Plaintiff's request for a future wage loss damages award.  However, if Plaintiff is able to provide additional support for future damages and demonstrates that he took reasonable measures to reduce its damages, it is respectfully recommended that this Court reconsider its decision thereafter.

      **B.**      *Special Damages for Torts*

Apart from the aforementioned economic damages, in a tort action a party may recover all damages proximately caused by the tortious misconduct and resulting injury.  *Schroeder v. Perkel*, 87 N.J. 53, 66 (1981).  Based on the facts before this Court, and accepting same as true, this Court finds that Plaintiff's economic, physical, medical and mental/emotional damages were proximately caused by Defendant's negligence, as the injuries would not have occurred but for Defendant's failure to properly maintain the roof and/or chimney.  As such, Plaintiff is entitled to relief for the aforementioned damages.  However, because the evidence before the Court is limited and Plaintiff failed to provide evidentiary support for the exact amount of damages he suffered, this Court must make a determination based on a reasonable assessment and estimation.

In the instant matter, this Court finds it reasonable to award the total payments made to Plaintiff by Paradigm for lost wages and medical fees, as such amount is indicative of the injuries and damages proximately caused by Defendant's tortious negligence. (Exh. 17 at 1.)  Specifically, Plaintiff may recover the $1,265,051.37 paid by Paradigm, as this amount would not have been paid had Plaintiff not been injured by Defendant's negligence.  (*See id.*)  However, since the Court has already discussed past and future wages above and has decided to award Plaintiff $21,419.73 for same, this amount shall be deducted from the amount paid by Paradigm.  Therefore, the

Undersigned respectfully recommends that this Court enter an award of $1,243,631.64 for special damages against Defendant.[3]

### C.   *Pain and Suffering Damages*

A Plaintiff may recover compensatory damages for bodily injuries suffered in a tort provided he can prove that he sustained an injury. *Schroeder v. Perkel*, 87 N.J. 53, 66 (1981). A Plaintiff may recover for the pain, physical and mental suffering and distress that a person endures as a consequence of the injury. N.J. Model Civ. Jury Charges 8.11E (1996). Notably, damages for past suffering can be awarded to a plaintiff. *Id.* Likewise, future damages can be awarded provided that the Court can reasonably expect the consequences to continue in the future. *Id.* The measure of damages "is what a reasonable person would consider to be adequate and just under all the circumstances to compensate." *Id*. In calculating an award for suffering and/or distress, a court may evaluate a plaintiff's situation by examining his or her age, usual activities, occupation, family responsibilities and other relevant facts. *Id.* The nature of the injury itself also may be considered by the court, namely the "nature, character and seriousness of any injury, discomfort or disfigurement." *Id.* There is no formula, however, for calculating pain and suffering in terms of money. *Caldwell v. Haynes*, 136 N.J. 422, 442 (1994) ("Assigning a monetary value to pain-and-suffering compensation is difficult because that kind of

---

[3]   **While the Undersigned recommends awarding a separate amount for past wage loss damages, under New Jersey law, awarding Plaintiff monies that have already been paid on his behalf is permissible. See N.J.S.A. § 2A:15-97 (2010). Stated differently, Plaintiff's award for tort damages need not reflect a deduction for the amount Paradigm paid to Plaintiff or paid on behalf of Plaintiff. See id. While New Jersey law requires that certain benefits received from third parties be deducted from a party's recovery, workman's compensation does not fall into any such category. Id. (stating that only benefits obtained from sources other than workman's compensation need to be deducted). Accordingly, Defendant is liable for the full amount paid from Paradigm to Plaintiff, including any amount paid for workman's compensation purposes.**

   **Likewise, this Court will not deduct any settlement amount already received by the Plaintiff from the total award this Court is prepared to enter. Under the collateral source doctrine, any compensation received from a collateral source will not be deducted from the final judgment. See Long v. Landy, 35 N.J. 44, 55 (1961). Moreover, under New Jersey law, settlement offers need not be deducted from the recovery. See N.J.S.A. § 2A:15-97 (2010); Kiss v. Jacob, 138 N.J. 278, 339 (1994) (discussing how the legislature did not intend for settlements to be included in the term benefits under Statute).**

harm is 'not gauged by any established graduated scale.'" (quoting *Cermak v. Hertz Corp.*, 53 N.J. Super. 455, 465 (App. Div. 1958))).

First, the testimony and Exhibits introduced at the proof hearing sufficiently demonstrate that Plaintiff was injured at the building site on the date of the incident, and as such, pain and suffering damages may be appropriate. (*See generally* Exhs. 10-14.) Next, in order to understand "what a reasonable person would consider to be adequate and just compensation" one must apply the relevant categories to the facts at issue. Here, Plaintiff, a twenty-six-year-old male has lost the ability to work in his chosen profession. (*Id*. at 7:7, 8:25, 9:1-5.) Plaintiff testified that he suffers from a loss of appetite, he is unable to drive a car and requires transportation and further stated that he can no longer "play sports . . . work . . . walk normally" and is essentially unable to do approximately "80 percent of the things that I used to do before." *(Id*. at 23:6-9, 26:1-27.) Additionally, Plaintiff may no longer maintain normal sexual relationships, as the accident left him impotent. (Tr. 17:2-13.)

Undoubtedly, Plaintiff suffered numerous severe injuries affecting the quality of his life. The Plaintiff's neck and ribs were injured during the incident. (Tr. 13:4-5; *see* Attorney Cert. ¶¶ 1, 10, Exhs. 9, 18.) According to the Plaintiff, immediately following the incident he was unable to walk, move his arms or use his left hand. (Tr. 14:2-19; *see* Attorney Cert. ¶ 4, Exh. 12.) After two weeks at Hackensack Hospital (Tr. 12:21-23; Attorney Cert. ¶ 10, Exh. 18), Plaintiff was moved to the Kessler Rehabilitation Institute ("Kessler"), where he spent three months learning how to move his hand, to once again become independent, learn how to dress himself, take a shower and the like. (Tr. 14:7-10.) While hospitalized, Plaintiff used a wheelchair for approximately three months until he transitioned to a walker. (Tr. 18:12-25.) Once discharged from Kessler, Plaintiff returned for therapy for approximately one year and eight months for three days a week. (*Id.* at 17:14-24.) Plaintiff testified that he was eventually required to wear several braces for his injuries, explaining he needed braces to "keep my fingers open, my hands open, my left hand open. And one for [my] leg, to help me walk.

And one to get my movement stimulated, like the nerves." (*Id.* at 20:10-16.) By the time of the proof hearing, Plaintiff could walk with assistance, but had not fully regained the use of his left hand and was still using the hand and leg braces. (*Id.* at 15:1-21, 20:21, 21:11.) More specifically, he was still unable to move his left hand and had mobility problems with his left leg, which prohibited him from standing for long periods, walking and/or running. (*Id.* at 15:7-21.)

Plaintiff still suffers from a number of recurring injuries resulting from the accident. In addition to his mobility injuries, Plaintiff's bladder became smaller, forcing him to urinate every two hours and, on various occasions, this has resulted in Plaintiff accidentally urinating on himself. (*Id.* at 16:10-17:1; *see* Attorney Cert. ¶¶ 1-2, Exhs. 9, 11.) Plaintiff is now impotent and cannot defecate without using laxatives. (Tr. 17:2-13, 22:24-25; *see* Attorney Cert. ¶¶ 1-2, Exhs. 9, 11.) Additionally, as a result of the incident, Plaintiff now takes Cymbalta for depression, Vicodin for pain and unidentified medications for his urination and defecation problems. (*Id*. at 22:2-4, 25:10-19; *see* Attorney Cert. ¶¶ 3, 5, Exhs. 13-14.)

Plaintiff's injuries were and remain serious. The Court is convinced that the quality of his life has been severely diminished by Defendant's negligence and that there is sufficient evidence that Plaintiff's life will continue to be negatively impacted. (*See generally* Tr.; Exhs. 9,11,13-14.) The Undersigned finds that an award of $750,000 for pain and suffering will help compensate Plaintiff for the pain and suffering already experienced, as well as the pain and suffering he will continue to experience as a result of the injury.

In so ruling, this Court refers to the analogous case: *Ednyak v. Alantic Shipping Co.*, 562 F. 2d 215 (3d Cir. 1977). In that case, Plaintiff suffered a gruesome permanent injury to his hand that was partially repaired after numerous surgeries. *Id.* at 225-26. The trial judge awarded $273,500

for loss of earning capacity and for pain and suffering.[4]  *Id*.  The Third Circuit affirmed the judgment, noting that while the Court may have awarded a lesser amount, the amount ultimately awarded was within the trial court's discretion.  *Id*.

The case of *Gumbs v. Pueblo Intern., Inc.*, 823 F.2d 768 (3d Cir. 1987) is also instructive.  In *Gumbs*, the plaintiff, after falling in a grocery store, felt immediate pain.  The court accepted that she suffered intermittent future pain and that she was unable to engage in sexual intercourse or perform household chores.  She was not, however, hospitalized for her injury and remained capable of walking 25 stairs a day.  The Third Circuit found that a judgment of $235,000 was the maximum judgment allowable for pain and suffering, loss of mental anguish and loss of enjoyment of life.[5]  *Id.* at 775.

Like the plaintiff in *Ednyak*, Plaintiff in this matter severely injured his back and legs, underwent extensive post-injury rehabilitation and has not yet recovered full mobility.  (Tr. 14:2-19; *see* Attorney Cert. ¶ 4, Exh. 12.)  Plaintiff's injuries were even more severe than the *Ednyak* and *Gumbs* plaintiffs, because Plaintiff suffered additional injuries affecting his quality of life: he is now impotent, has lost full control of his bowel movement, continues to suffer from pain and must take extensive medication to ameliorate his physical and mental anguish.  (Tr. 17:2-13, 22:2-4, 25:10-19; *see* Attorney Cert. ¶¶ 3, 5, Exhs. 13-14.)  Thus, when considering inflation and the fact that the *Ednyak* and *Gumbs* awards were entered in 1977 and 1987 respectively, coupled with this Court's finding that Plaintiff's injuries are more severe than those suffered by the *Ednyak* and *Gumbs* plaintiffs, this Court finds that a judgment of $750,000 for past and future pain and suffering is reasonable.  Accordingly, the Undersigned respectfully recommends that this Court grant Plaintiff an award of $750,000 for past and future pain and suffering against Defendant.

---

[4]   When considering inflation, the value of award in 2010 increases to $977,952.02.  *See* CPI Bureau of Labor Statistics, Inflation Calculator, http://data.bls.gov/cgi-bin/cpicalc.pl (last visited June 7, 2010).

[5]   When considering inflation, the value of the award in 2010 increases to $448,252.16.  *See id*.

**D.     Future Medical Expenses**

The Undersigned finds that Plaintiff's failure to provide sufficient evidence of future medical expenses for this Court's review precludes such an award.  As such, damages cannot be determined with a reasonable degree of certainty.  Therefore, it is respectfully recommended that Plaintiff's request for an award for future medical expenses be denied without prejudice.  However, if Plaintiff provides sufficient evidence to demonstrate that an award for future medical expenses is necessary and appropriate, it is respectfully recommended that this Court consider same thereafter.

**III.     CONCLUSION**

For the foregoing reasons, the Undersigned respectfully recommends that this Court enter an Order granting Plaintiff Wilson Brum's Motion for Final Judgment by Default against Defendant Extreme Builders, Inc.   Further, it is respectfully recommended that this Court grant Plaintiff Wilson Brum an award of $2,015,051.37 for compensatory damages, which represents: $21,419.73 in past lost wages, $1,243,631.64 in special damages and $750,000.00 in pain and suffering.  Defendant Extreme Builders, Inc. shall be liable for the total amount awarded.  It is further respectfully recommended that Plaintiff's request for an award for future economic loss and medical expenses be denied without prejudice.

June 9, 2010

                                          Respectfully submitted,

                                          s/Michael A. Shipp
                                          **Honorable Michael A. Shipp**
                                          **UNITED STATES MAGISTRATE JUDGE**